# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBERT LEE CALBERT, JR.,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**NANCY A. BERRYHILL,** )<br>**Acting Commissioner of the Social** )<br>**Security Administration,**[1] )<br><br>**Defendant.** ) | **Case No. CIV-16-126-SPS** |

## OPINION AND ORDER

The claimant Robert Lee Calbert, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2]  Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 3, 1970, and was forty-five years old at the time of the administrative hearing (Tr. 757). He earned a GED, and has past relevant work as a donut maker, manager of a restaurant, and short order cook (Tr. 180, 722). The claimant alleges that he has been unable to work since September 14, 2011, due to major depressive disorder, anxiety disorder, panic disorder, alcohol addiction, chronic obstructive pulmonary disease, and asthma (Tr. 179).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 23, 2011. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated September 24, 2013 (Tr. 7-31). The Appeals Council denied review, but this Court reversed in Case No. CIV-14-489-SPS, and remanded upon motion by the Commissioner (Tr. 843-848). Upon remand, the Appeals Council instructed the ALJ to, *inter alia*, further evaluate the claimant's mental impairments and give further consideration to the claimant's maximum RFC (Tr. 852). On remand, ALJ David W. Engel held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated

January 27, 2016 (Tr. 690-724). The Appeals Council denied review, so ALJ Engel's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform "between light work and sedentary work, *i. e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk two hours total in an eight-hour workday with regular breaks, and sit for six hours total with regular breaks, but he could only occasionally climb ramps/stairs, bend, stoop, crouch, crawl, perform overhead reaching, and use foot pedals and he could never climb ropes/ladders/scaffolds or be exposed to unprotected heights, dangerous moving machinery parts ,or environments where he would be exposed to extremes of temperature. Furthermore, the ALJ determined that the claimant could understand, remember, and carry out simple instructions in a work-related setting, but could only occasionally interact with the general public (regardless of whether interaction took place on the telephone or not), and he could remain attentive and responsive in a work setting and would be able to perform work assignments within these limitations (Tr. 707-708). The ALJ concluded that although the claimant could not return to his past relevant work as a driver, he was nevertheless not disabled because there was work he could perform in the regional and national economy, *i. e.*, clerical mailer, assembler, and stuffer (Tr. 722-724).

## Review

The claimant's sole contention of error is that the ALJ erred by improperly rejecting a number of opinions from his treating physician, Dr. Terry Hoyt. The Court agrees with the claimant's contention and finds that the decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

ALJ Engel determined that the claimant's severe impairments were chronic obstructive pulmonary disease, right ankle sprain, depression, anxiety with panic attacks, and drug and/or alcohol abuse (Tr. 696). Relevant medical records reflect that Dr. Hoyt treated the claimant for a number of years, until approximately 2015 when he passed away (Tr. 490-494, 588-593, 619, 641-642, 1153-1169). Dr. Cary Sullivan took over the claimant's treatment at that time.

In February 2011, the claimant received treatment at CREOKS Mental Health facility in Sallisaw, Oklahoma, reporting increasing depression over the previous few months (Tr. 477). He was assessed with major depression, moderate, recurrent, and alcohol abuse, and he was assessed a global assessment of functioning (GAF) score of 55 (Tr. 479-480). He was noted to have limited insight, but had a good prognosis if he was willing to engage in treatment and be committed to recovery (Tr. 482). He was then sent to Laureate for inpatient treatment from February 13-16, 2011 (Tr. 1054-1085). On June 7, 2011, the claimant was reported to be a danger to himself and others and a petition for involuntary commitment was submitted. The claimant's provisional diagnoses were: depression, alcoholism II, hypertension, and seizures that were likely alcohol induced, and he was assessed a GAF score of 70 (Tr. 363-364, 367).

On January 21, 2012, Dr. Beth Jeffries, Ph.D., conducted a mental status examination of the claimant (Tr. 485). Noting that the claimant reported a traumatic brain injury at the age of nine years old, Dr. Jeffries stated that neuropsychological testing could provide more specific information in that regard, but she noted that his memory and concentration appeared to be intact (Tr. 487). Dr. Jeffries, in discussing the claimant's appearance and behavior, stating that the claimant's "sincerity was questioned at time in the valuation." (Tr. 486). She further recommended continued treatment at CREOKS, but with the addition of substance abuse treatment, noting that it was "nearly impossible" to make a good assessment of his moods apart from substance abuse, and that he would not likely have good mood control while abusing alcohol (Tr. 487). She did not believe he would be able to manage benefit payments in his own interest (Tr. 488). On March 9, 2012, the claimant reported having increased anxiety in public (Tr. 569).

On April 11, 2012, S.C. Williams White reviewed the record and determined that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting (Tr. 509-510). S.C. Williams White concluded that the claimant could perform simple, unskilled work related activities with sustainability, and that he was capable of low stress social situations and adapting to routine change (Tr. 511).

Treatment notes from CREOKS reflect that on May 16, 2013, both the claimant and his therapist reported increased irritability, severe depression, and high anxiety (Tr. 1282). On October 8, 2014, he was still reporting insomnia, anger spells, nightmares, a decrease in appetite, and a lot of panic attacks and headaches (Tr. 1294). He had begun refusing group therapy because he did not like to be around people, and there was a concern with prescribing further medications until the claimant had been assessed by the crisis team (Tr. 1294).

On May 14, 2012, Dr. Hoyt completed a medical opinion regarding absences for work for the claimant, indicating that he would be absent about three or more days per month (the highest option available) due to joint stiffness, neuropathy with numbness and tingling in hand and feet, and that he may have days where he has difficulty with concentration and the ability to focus (Tr. 531). That same day, he completed a Medical Opinion RE: Basic Unskilled Work Requirements, indicating that the claimant could not deal with changes in a routine work setting, could not maintain concentration and attention for extended periods in a routine work setting, or handle normal work stress in a routine work setting, and that his impairments would cause him to take unscheduled breaks during an eight-hour workday, and that his limitations would be present in the absence of any substance abuse (Tr. 532). He believed the claimant could manage benefits in his own interests (Tr. 532). In support, Dr. Hoyt cited to the claimant's arthralgias and numbness, the fluctuating ability to concentrate and deal with work stress due to encephalopathy and post-traumatic stress disorder (Tr. 532).

On May 18, 2012, Dr. Hoyt completed a Mental RFC Questionnaire, in which he indicated, *inter alia*, that the claimant's diagnoses were generalized anxiety disorder and alcohol abuse, unspecified, and that his current GAF was 45, with a highest GAF in the past year of 60 (Tr. 533). Under clinical findings, he indicated that the claimant had difficulty staying on task at times, as well as problems with concentration, and gave the claimant a fair prognosis, indicating that he could expect recurrent problem episodes (Tr. 533). He checked 5 boxes of areas indicating the claimant was seriously limited, but not precluded, including the areas of completing a normal workday and workweek without interruptions from psychologically based symptoms, and dealing with normal work stress (Tr. 534). Included in the signs and symptoms were generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, and substance dependence (Tr. 535). Furthermore, he indicated that the claimant was unable to meet competitive standards with regard to interacting appropriately with the general public, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness (Tr. 536). He also stated that the claimant would be absent more than four days per month, that the claimant was not a malingerer, and that substance abuse contributed to his limitations (Tr. 537).

On September 20, 2013, Dr. Hoyt completed another Medical Opinion regarding the claimant's absences from work, again checking the box to indicate he would be absent three or more days per month, the highest number available (Tr. 634). He stated that the claimant's osteoarthritis, COPD, generalized anxiety disorder, and depression would all contribute to these absences (Tr. 634). Three days later, he also completed

another Medical Opinion regarding Basic Unskilled Work Requirements, in which he made essentially the same indications as in May 2012, and indicated that the claimant's physical limitations, poor tolerance to stress, and limited ability to concentrate all contributed to these limitations (Tr. 635).

On September 24, 2013, Dr. Hoyt completed another Mental RFC assessment, in which he indicated that the claimant's diagnoses were major depressive affective disorder, recurrent, moderate, and hallucinogen intoxication, alcohol abuse in remission, and a psychosis disorder, along with a current GAF of 28 (Tr. 636). He indicated that signs included difficulty thinking or concentrating and decreased energy, and that the claimant was unable to meet competitive standards in seven areas, including maintaining attention for a two-hour segment, responding appropriately to changes in a routine work setting, and dealing with normal work stress, as well as the ability to carry out detailed instructions (Tr. 637-638). He further indicated the claimant had the limited, but satisfactory ability to interact appropriately with the general public (Tr. 639). Dr. Hoyt further indicated that the claimant's tolerance/compensation of pain and physical limitations greatly impacted him during periods of increased depression (Tr. 639). He again indicated the claimant would be absent from work more than four days per month and that his condition was expected to last more than twelve months, and stated under additional reasons for difficulty at a regular job on a sustained basis that, "again, issue of consistency, fluctuating mood swings." (Tr. 640). He indicated that he believed the claimant's mental impairments were the *result* of the claimant's years of substance abuse (Tr. 640).

Treatment notes from Dr. Sullivan (Dr. Hoyt's successor) in 2015 indicate that the claimant denied suicidal ideation and reported doing well with therapy twice a month, and the claimant was advised to continue counseling and psych (Tr. 743-745). On July 7, 2015, Dr. Sullivan completed a physical RFC assessment for the claimant, noting his diagnoses included COPD, depression, and allergic rhinitis, and that he had a fair prognosis (Tr. 1466). He noted that the claimant's psychological condition of depression affected his symptoms and functional limitations, and that the claimant's experience of pain would also occasionally interfere with his attention and concentration (Tr. 1467). He indicated, *inter alia*, that the claimant was capable of low stress jobs, that the claimant could sit and stand/walk each less than two hour total in an eight-hour workday, that he needed a sit/stand at will option, and that he would need to take unscheduled breaks (Tr. 1468). Furthermore, he indicated that the claimant could only occasionally lift/carry ten pounds or less, perform postural activities, and that the claimant would likely be absent about one day per month (Tr. 1468-1469). However, he also completed a separate form regarding absences from work, in which he indicated that the claimant would be absent from work three or more days per month, due to pulmonary function problems, and COPD (Tr. 1490).

On April 30, 2015, Dr. Jimmie W. Taylor completed a consultative physical examination of the claimant (Tr. 1431). His impression was: bipolar disorder, agoraphobia, COPD, asthma, exercise intolerance, PTSD, history of memory loss, reduced vision, chronic bronchitis, and tobacco addiction (Tr. 1433).

In his written opinion, ALJ Engel extensively summarized the claimant's hearing testimony and the medical evidence in the record. As to Dr. Hoyt's opinions, the ALJ summarized each of his opinions, as well as much of his treatment records (Tr. 709-713). The ALJ then determined that the claimant was credible enough to find that he could not perform more than work between the light and sedentary RFC (Tr. 715). In a lengthy discussion of Dr. Hoyt's opinions, the ALJ gave: (i) little weight to Dr. Hoyt's statements that the claimant's mood fluctuated and that he was unstable, stating that "fluctuated" is a vague term and Dr. Hoyt is not a mental health professional; (ii) little weight to the opinion (made more than once) that the claimant would miss three or more days of work a month, finding it conjecture and "not medical fact"; (iii) some weight to the statement that the claimant would be unable to meet competitive standards for interacting with the general public; (iv) great weight to the finding that the claimant was capable of basic unskilled work, making simple decisions in a routine work setting, and responding appropriately to supervision and co-workers in a routine work setting; (v) little weight to the statement that the claimant could not deal with changes or normal work stress, finding it inconsistent with the record (to which he generally cited large portions without stating what the inconsistencies were), and noting again (and repeatedly) that Dr. Hoyt is not a mental health professional; (vi) little weight to the statements that the claimant was seriously limited, but not precluded, from understanding and remembering very short and simple instructions, maintaining regular attendance and punctuality, and making simple work-related decisions; and (vii) further made the finding that the term "seriously limited" was also vague and inconsistent with the record (again

citing large swaths of the record without stating which portions aided in determining inconsistency). Of note, despite finding the claimant's depression, anxiety with panic attacks, and drug and/or alcohol abuse to be severe impairments at step two, the ALJ stated at step four that the claimant's "mental impairment, which was the basis of the Court remand, appears to have fallen by the wayside." (Tr. 696, 716). In support, the ALJ found that the claimant "admitted" to doing well in 2015, and blamed the claimant's worsening of symptoms to noncompliance at times and also to the drug and/or alcohol abuse. Furthermore, the ALJ noted Dr. Jeffries' statements in 2012, interpreting her statement that the she questioned the claimant's sincerity as an indicator that the claimant might be malingering, and alleging record tampering because the CREOKS records were redacted of all references to substance abuse (Tr. 716-717).

On appeal, the claimant contends that the ALJ improperly disregarded Dr. Hoyt's findings and based his disregard of Dr. Hoyt's opinions on his own speculative opinions. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the

physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis in step four, he failed to properly apply it in this case. The error first occurred when the ALJ determined that the claimant had multiple severe mental impairments, then concluded that the mental impairments had "fallen by the wayside" based on a few positive reports. This was a significant omission here because these limitations discussed directly impact the claimant's ability to perform work. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, and further finding him partially not credible because of, *inter alia*, drug use. *See McCleave v. Colvin*, 2013 WL 4840477, at *6 n.6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed

-13-

psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

The error was compounded by the ALJ's errors specifically in regard to his assessment of Dr. Hoyt's opinions, including his perplexing finding that Dr. Hoyt's multiple statements regarding the amount of time the claimant would miss work was merely conjecture (and completely ignoring the fact that Dr. Sullivan made a similar finding), and his conclusion that Dr. Hoyt's use of the terms "fluctuating" and "seriously limited" were vague. The Commissioner herself acknowledges that these statements do not reflect Social Security regulations or standards, but characterizes them as "perhaps ill-advised" and insufficient to support a remand. The Court disagrees. Despite the length of the opinion prepared by the ALJ, including the details of almost every medical appointment contained in the record, the ALJ's analysis falls short. Both Dr. Hoyt and

Dr. Sullivan found that the claimant would be absent from work more than three or four days each month, yet the ALJ ignored Dr. Sullivan's findings (but assigned controlling weight to his opinion regarding the claimant's COPD (Tr. 721)), while characterizing Dr. Hoyt's as "conjecture." *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").  Although it was proper for the ALJ to note that Dr. Hoyt is not a mental health professional, the ALJ failed to take into account other factors, including the longitudinal relationship Dr. Hoyt had with the claimant as well as the fact that the limitations Dr. Hoyt noted were based, not solely on his mental impairments, but on the combination of physical and mental impairments, and that they were affected by his substance abuse.  Moreover, the ALJ's rejection of Dr. Hoyt's use of the term "fluctuating" belies the fact that the record reflects inpatient treatment for suicidal ideation in 2011 and reports of worsening symptoms at times in the record, interspersed with the reports that the claimant was doing well.  The ALJ attempts to paint this as solely due to the claimant's reactions to his mother's cancer diagnoses and her death several years later, and further fails to account for the effect of the claimant's substance abuse on his mental impairments – which the record indicates would still exist even in the absence of substance abuse.

Additionally, the RFC does not reflect that the ALJ accounted for the claimant's severe impairments involving substance abuse at all, nor does he explain how his substance abuse impairments in combination with his mental impairments affected his

RFC.  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7.

In sum, the errors the Commissioner characterizes as "ill-advised" are actually reversible where, as here, the ALJ appeared to adopt any statement that the claimant could perform unskilled work while rejecting any portion of the evidence to suggest further impairment.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].  Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ.  If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**